IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| PAYRANGE INC., | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | C.A. 24-340 |
| | § | |
| NAYAX LTD., | § | **JURY TRIAL DEMANDED** |
| | § | |
| Defendant. | § | |

**COMPLAINT FOR PATENT INFRINGEMENT**
**AND DEMAND FOR JURY TRIAL**

1. Pursuant to Section 1338 of Title 28 of the United States Code, Plaintiff PayRange Inc. ("Plaintiff" or "PayRange") alleges for its Complaint against Defendant Nayax Ltd. ("Nayax") ("Nayax" or "Defendant"), on personal knowledge and information and belief as noted.

2. This Complaint arises under the patent laws of the United States, Title 35 of the United States Code. This Court has subject matter jurisdiction over this action under 35 U.S.C. § 271 et seq., 28 U.S.C. §§ 1331 and 1338(a).

**THE PARTIES**

3. PayRange is a Tennessee corporation with its principal place of business at 9600 NE Cascades Pkwy, Suite 280, Portland, OR 97220.

4. On information and belief, Nayax is an Israeli corporation with its principal place of business at 3 Arik Einstein St., Bldg. B, 1st Floor Herzliya, Israel 4659071.

5. PayRange's acclaimed technology enables its customers to upgrade a coin-operated unattended retail machine into a state-of-the-art mobile payment solution with a small module, called "BluKey." PayRange's mobile app communicates with BluKey to enable mobile

transactions. The United States Patent & Trademark Office ("USPTO") awarded PayRange a portfolio of patents for its innovations.

6. PayRange's patent portfolio is prominently identified on its website pursuant to PayRange's virtual patent marking practices: https://payrange.com/patents/

7. PayRange found success in the laundry and vending industries, attracting significant customers including WASH Multifamily Laundry Systems ("WASH"). Unfortunately, competitors took notice and improperly copied PayRange's technology. As a result, PayRange initiated litigation against a major competitor (KioSoft) and subsequently against KioSoft's major customer (CSC). In response, KioSoft and CSC challenged the validity of PayRange's patents before the USPTO. PayRange prevailed with confirmed claims in every USPTO challenge that proceeded to a Final Written Decision.

8. On January 31, 2024, PayRange and KioSoft issued a press release announcing a settlement. KioSoft's President, Charles Lee, is quoted:

> *"While we had challenged the PayRange patents vigorously, the Patent Trial and Appeal Board (PTAB) upheld the PayRange patents and, although we disagreed with the result, we must now accept that PayRange has valid claims," stated Charles Lee, President of KioSoft. "We respect the technologies that have helped the self-service industry thrive; and we look forward to continuing to lead innovation and development by providing best-in-class service to our customers with this fully-licensed technology, without any further legal distractions."*

9. KioSoft agreed to license PayRange's technology for an amount that could exceed $62 million over a ten-year period, dependent on outcomes with a base license of $40 million.

10. In April 2024, on the heels of its settlement with KioSoft, PayRange also resolved its patent infringement dispute with KioSoft's customer CSC.

11. In May 2024, PayRange reached a patent licensing deal with WASH, one of the largest providers of laundry facilities in the United States. The agreement licenses PayRange's

patents for use with the WASH-Connect Mobile Payment App and will continue for the term of PayRange's patents. In the press release, WASH's CEO, Jim Gimeson stated:

> *"We're a privately held company founded in 1947 and we hold dear our reputation for integrity and ethical practices," says WASH CEO Jim Gimeson. "As operators, we hold a deep respect for the innovations PayRange has brought to elevate the laundry industry."*

12. PayRange hoped that its other competitors would respect its intellectual property. PayRange hoped that its competitors would, like KioSoft, accept that PayRange had valid patent claims. PayRange hoped that its other competitors would, like, WASH, act with integrity and adhere to ethical practices.

13. On March 20, 2024, PayRange sent Nayax a letter (*See* **Exhibit 6**) providing notice of its potential infringement and inviting licensing discussions. PayRange provided detailed claim charts showing that Nayax infringes at least:

a. U.S. Patent Nos. 11,481,772 (the "'772 patent");

b. Allowed claims of U.S. Patent Application No. 18/197,071, which issued as U.S. Patent No. 11,972,423 (the "'423 patent"); and

c. Allowed claims of U.S. Patent Application No. 18/197,071, which issues as U.S. Patent No. 11,966,920 (the "'920 patent").

14. Three months later, Nayax finally sent a response with purported defenses, but those purported defenses were meritless. Moreover, Nayax provided no indication that it would cease infringement, take a license, or even accept PayRange's invitation to meet to discuss the matter. PayRange was, again, compelled to file this action to protect its innovations and stop Nayax's patent infringement.

## JURISDICTION AND VENUE

15. This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1 et seq.

16. This Court has subject matter jurisdiction over this patent infringement action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

17. Upon information and belief, Nayax has infringed PayRange's patents-in-suit in this District by, among other things, engaging in infringing conduct within and directed at, or from, this District. Nayax has purposefully and voluntarily placed one or more of its infringing products, as described below, into the stream of commerce with the expectation that these infringing products will be used in this District. Nayax's infringing products have been and continue to be used in this District.

18. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(c). Nayax is a foreign entity and may be sued in any judicial district under 28 U.S.C. § 1391(c)(3).

## PAYRANGE'S PATENTS-IN-SUIT

19. To protect its unique and innovative technologies, PayRange filed a provisional patent application (No. 61/917,936) on December 18, 2013. Several patents issued based on this original application, including the patents-in-suit, a summarized below.

20. On January 12, 2021, the USPTO issued U.S. Patent No. 10,891,608 (the "'608 patent"), titled "METHOD AND SYSTEM FOR AN OFFLINE-PAYMENT OPERATED MACHINE TO ACCEPT ELECTRONIC PAYMENTS." A true and correct copy of the '608 patent is attached hereto as **Exhibit 1.**

21. On October 25, 2022, the USPTO issued the '772 Patent, titled "METHOD AND SYSTEM FOR PRESENTING REPRESENTATIONS OF PAYMENT ACCEPTING UNIT EVENTS." A true and correct copy of the '772 Patent is attached hereto as **Exhibit 2.** On

November 22, 2023, PayRange filed a disclaimer in the ’772 Patent, which disclaims Claims 1-6, 8-10 and 12-20 of the ’772 Patent. A true and correct copy of the disclaimer is attached hereto as **Exhibit 3**.

22. On April 23, 2024, the USPTO issued the ’920 patent, titled “METHOD AND SYSTEM FOR PRESENTING REPRESENTATIONS OF PAYMENT ACCEPTING UNIT EVENTS.” A true and correct copy of the ’920 patent is attached hereto as **Exhibit 4.**

23. On April 30, 2024, the USPTO issued the ’423 patent, titled “METHOD AND SYSTEM FOR PRESENTING REPRESENTATIONS OF PAYMENT ACCEPTING UNIT EVENTS.” A true and correct copy of the ’423 patent is attached hereto as **Exhibit 5.**

## COUNT I
## INFRINGEMENT OF THE ’608 PATENT

24. PayRange realleges and incorporates the allegations of the preceding paragraphs of this complaint as if fully set forth herein.

25. PayRange is the assignee and owner of all right, title, and interest in and to the ’608 patent. PayRange has the exclusive right to make, use, sell, and offer to sell any product embodying the ’608 patent throughout the United States, and to import any product embodying the ’608 patent into the United States.

26. A significant advantage of the ’608 patent is the ability to emulate an analog signal generated by the coin receiving switch of the offline payment-operated machine. Another advantage was receiving a wireless request via the short-range wireless transceiver from a mobile device. A further advantage is causing an offline payment-operated machine to initiate the requested cashless operation by issuing the first number of electrical pulses. These advantages were not routine, well-understood or conventional.

27. Upon information and belief, Nayax has and is infringing at least claim 1 of the ’608 patent in this District and elsewhere in the United States, by, among other things, directly or through intermediaries, making, using, selling and/or offering for sale payment devices, including VPOS Touch and Onyx, covered by one or more claims of the ’608 patent to the injury of PayRange. Nayax is directly infringing, literally infringing, and/or infringing the ’608 patent under the doctrine of equivalents. Nayax is thus liable for infringement of the ’608 patent pursuant to 35 U.S.C. § 271(a).

28. When placed into operation by Nayax or Nayax’s users, Nayax’s infringing products infringe at least claim 1 of the ’608 patent. They include a payment module (VPOS Touch and Onyx) for an offline payment-operated machine (*e.g.,* vending machine) including a coin receiving switch, the payment module comprising: a short-range wireless transceiver (*e.g.*, NFC) configured to communicate with one or more mobile devices; one or more processors; a first interface module configured to output to a control unit of the offline payment-operated machine one or more electrical pulses, each of the one or more electrical pulses emulating an analog signal generated by the coin receiving switch of the offline payment-operated machine in response to insertion of a single coin of a predetermined type in the offline payment-operated machine; and memory (*e.g.*, Flash memory) with one or more programs for execution by the one or more processors, the one or more programs including instructions for: storing, in the memory of the payment module, a number of the electrical pulses that must be received by the control unit to initiate an operation of the offline payment operating machine; receiving a wireless request via the short-range wireless transceiver from a respective mobile device of the one or more mobile devices to initiate a cashless operation of the offline-payment operated machine; and in response to the wireless request: determining a first number of electrical pulses to output

via the first interface module to the control unit of the offline payment-operated machine in order to initiate the requested cashless operation of the offline payment-operated machine; causing the offline payment-operated machine to initiate the requested cashless operation by issuing the first number of electrical pulses to the control unit via the first interface module; and sending operation information corresponding to the initiated operation of the offline payment-operated machine to the respective mobile device via the short-range wireless transceiver.

29. To the extent Nayax payment devices (including VPOS Touch and Onyx), without more, do not directly infringe at least claim 1 of the ’608 patent, Nayax actively encourages their business partners, end-users and/or customers to use Nayax payment devices in an infringing manner. Nayax encourages infringement with a specific intent to cause its business partners and customers to infringe. Nayax’s acts thus constitute active inducement of patent infringement in violation of 35 U.S.C. § 271(b).

30. In addition, Nayax contributes to infringement of the same under 35 U.S.C. § 271(c) inasmuch as the infringing products offered for sale and sold by Nayax are each a component of a patented machine or an apparatus used in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in infringement of the ’608 patent.

31. Nayax’s direct infringement, contributory infringement, and inducement of infringement have irreparably harmed PayRange.

32. Upon information and belief, Nayax will continue to infringe the ’608 patent unless enjoined.

33. Pursuant to 35 U.S.C. § 284, PayRange is entitled to damages adequate to compensate for the infringement. PayRange has complied with its patent marking obligations

including by virtually marking its patents through the following URL: https://payrange.com/patents/

34. This case is “exceptional” within the meaning of 35 U.S.C. § 285, and PayRange is entitled to an award of attorneys’ fees.

## COUNT II
## INFRINGEMENT OF THE ’920 PATENT

35. PayRange realleges and incorporates the allegations of the preceding paragraphs of this complaint as if fully set forth herein.

36. PayRange is the assignee and owner of all right, title, and interest in and to the ’920 patent. PayRange has the exclusive right to make, use, sell, and offer to sell any product embodying the ’920 patent throughout the United States, and to import any product embodying the ’920 patent into the United States.

37. A significant advantage of the ’920 patent is the ability to identify payment accepting units based on the location or identifier corresponding to the payment accepting units. Another significant advantage is displaying a visual indication of the payment accepting units. Completing a transaction after establishing a wireless communication is another significant advantage. These advantages were not routine, well-understood or conventional.

38. Upon information and belief, Nayax has and is infringing at least claim 1 of the ’920 patent in this District and elsewhere in the United States, by, among other things, directly or through intermediaries, making, using, selling and/or offering for sale products such as Monyx Wallet app, covered by one or more claims of the ’920 patent to the injury of PayRange. Nayax is directly infringing, literally infringing, and/or infringing the ’920 patent under the doctrine of equivalents. Nayax is thus liable for infringement of the ’920 patent pursuant to 35 U.S.C. § 271(a).

39. **Exhibit 6**, which is incorporated herein, include a chart providing an element-by-element comparison between Nayax and claim 1 of the ’920 patent.

40. Nayax actively encourages their business partners and/or customers to use Monyx Wallet in an infringing manner. Nayax encourages infringement with a specific intent to cause its business partners and customers to infringe. Nayax’s acts thus constitute active inducement of patent infringement in violation of 35 U.S.C. § 271(b).

41. To the extent Monyx Wallet, without more, does not directly infringe at least claim 1 of the ’920 patent, Nayax contributes to infringement of the same under 35 U.S.C. § 271(c) inasmuch as the infringing products offered for sale and sold by Nayax is a component of a patented machine or an apparatus used in practicing a patented process, constituting a material part of PayRange’s invention, knowing the same to be especially made or especially adapted for use in infringement of the ’920 patent.

42. Nayax’s direct infringement, contributory infringement, and inducement of infringement have irreparably harmed PayRange. On information and belief, PayRange has lost prospective customers and was forced to compete against its own technology, at least in part, due to Nayax’s infringement. The continued infringement harms PayRange’s reputation in the marketplace and discourages other potential customers from purchasing PayRange’s solutions. These reputational and business harms cannot be adequately remedied by monetary compensation.

43. Upon information and belief, Nayax will continue to infringe the ’920 patent unless enjoined.

44. Pursuant to 35 U.S.C. § 284, PayRange is entitled to damages adequate to compensate for the infringement, including a reasonable royalty and/or lost profits. PayRange notified Nayax of its infringement even prior to issuance of the ’920 patent.

45. This case is “exceptional” within the meaning of 35 U.S.C. § 285, and PayRange is entitled to an award of attorneys’ fees.

## COUNT III
## INFRINGEMENT OF THE ’423 PATENT

46. PayRange realleges and incorporates the allegations of the preceding paragraphs of this complaint as if fully set forth herein.

47. PayRange is the assignee and owner of all right, title, and interest in and to the ’423 patent. PayRange has the exclusive right to make, use, sell, and offer to sell any product embodying the ’423 patent throughout the United States, and to import any product embodying the ’423 patent into the United States.

48. A significant advantage of the ’423 patent is the ability to identify payment accepting units based on an identifier corresponding to the payment accepting units. Another significant advantage is displaying a visual indication of the payment accepting units. Completing a transaction after establishing a wireless communication was another significant advantage. These advantages were not routine, well-understood or conventional.

49. Upon information and belief, Nayax has and is infringing at least claim 1 of the ’423 patent in this District and elsewhere in the United States, by, among other things, directly or through intermediaries, making, using, selling and/or offering for sale products such as Monyx Wallet app, covered by one or more claims of the ’423 patent to the injury of PayRange. Nayax is directly infringing, literally infringing, and/or infringing the ’423 patent under the doctrine of

equivalents. Nayax is thus liable for infringement of the ’423 patent pursuant to 35 U.S.C. § 271(a).

50. **Exhibit 6**, which is incorporated herein, includes a chart providing an element-by-element comparison between Nayax and claim 1 of the ’423 patent.

51. Nayax actively encourages its business partners, end-users and/or customers to, for instance, use Monyx Wallet in an infringing manner. Nayax encourages infringement with a specific intent to cause its business partners and customers to infringe. Nayax’s acts thus constitute active inducement of patent infringement in violation of 35 U.S.C. § 271(b).

52. To the extent Monyx Wallet, without more, does not directly infringe at least claim 1 of the ’423 patent, Nayax contributes to infringement of the same under 35 U.S.C. § 271(c) inasmuch as the infringing products offered for sale and sold by Nayax is a component of a patented machine or an apparatus used in practicing a patented process, constituting a material part of PayRange’s invention, knowing the same to be especially made or especially adapted for use in infringement of the ’423 patent.

53. Nayax’s direct infringement, contributory infringement, and inducement of infringement have irreparably harmed PayRange. On information and belief, PayRange has lost prospective customers and was forced to compete against its own technology, at least in part, due to Nayax’s infringement. The continued infringement harms PayRange’s reputation in the marketplace and discourages other potential customers from purchasing PayRange’s solutions. These reputational and business harms cannot be adequately remedied by monetary compensation.

54. Upon information and belief, Nayax will continue to infringe the ’423 patent unless enjoined.

55. Pursuant to 35 U.S.C. § 284, PayRange is entitled to damages adequate to compensate for the infringement, including a reasonable royalty and/or lost profits. PayRange notified Nayax of its infringement even prior to issuance of the ’423 patent.

56. This case is “exceptional” within the meaning of 35 U.S.C. § 285, and PayRange is entitled to an award of attorneys’ fees.

**COUNT IV**
**INFRINGEMENT OF THE ’772 PATENT**

57. PayRange realleges and incorporates the allegations of the preceding paragraphs of this complaint as if fully set forth herein.

58. PayRange is the assignee and owner of all right, title, and interest in and to the ’772 patent. PayRange has the exclusive right to make, use, sell, and offer to sell any product embodying the ’772 patent throughout the United States, and to import any product embodying the ’772 patent into the United States.

59. A significant advantage of the ’772 patent is the capability to display multiple payment accepting units on a mobile device. This allows a user to select one of many different machines and initiate payment to the selected machine using a mobile device.

60. The ’772 patent was unconventional in several respects. For example, claim 11 of the ’772 patent was unconventional. Claim 11 is directed to an improved user interface that contains essential information in requesting products and/or service from a payment accepting units in a particular manner. Before users request products and/or services, the mobile payment application shows available payment accepting units and the prepared balance. When users request products and/or services, the mobile payment application shows an indication of the initiation of transaction. Conventionally, the information described above was not easily

accessible to users or the information was shown on the interfaces of the payment accepting units, which were limited in the amount and the type of information that can be displayed.

61. Upon information and belief, Nayax has and is infringing claim 11 of the ’772 patent in this District and elsewhere in the United States, by, among other things, directly or through intermediaries, using products with mobile payment functionality, covered by claim 11 of the ’772 patent to the injury of PayRange. Nayax is directly infringing, literally infringing, and/or infringing the ’772 patent under the doctrine of equivalents. Nayax is thus liable for infringement of the ’772 patent pursuant to 35 U.S.C. § 271(a).

62. **Exhibit 6**, which is incorporated herein, provides an element-by-element comparison between Nayax and claim 11 of the ’772 patent.

63. Nayax actively encourages their business partners and/or customers to use Monyx Wallet in an infringing manner. Nayax encourages infringement with a specific intent to cause its business partners and customers to infringe. Nayax’s acts thus constitute active inducement of patent infringement in violation of 35 U.S.C. § 271(b).

64. Nayax’s direct infringement and inducement of infringement have irreparably harmed PayRange. On information and belief, PayRange has lost prospective customers and was forced to compete against its own technology, at least in part, due to Nayax’s infringement. The continued infringement harms PayRange’s reputation in the marketplace and discouraging other potential customers from purchasing PayRange’s solutions. These reputational and business harms cannot be adequately remedied by monetary compensation.

65. Upon information and belief, Nayax will continue to infringe the ’772 patent unless enjoined.

66. Pursuant to 35 U.S.C. § 284, PayRange is entitled to damages adequate to compensate for the infringement.

67. This case is "exceptional" within the meaning of 35 U.S.C. § 285, and PayRange is entitled to an award of attorneys' fees.

## REQUEST FOR RELIEF

WHEREFORE, PayRange requests that the Court find in its favor and against Nayax, and that the Court grant PayRange the following relief:

a. Judgment that Nayax infringes the patents-in-suit;

b. Judgment that Nayax is jointly and severally liable for infringement of the patents-in-suit.

c. That PayRange be granted with injunctive relief against Nayax and its officers, employees, agents, servants, attorneys, instrumentalities, and/or those in privity with them, to prevent the recurrence of the infringing activities complained of herein, including an injunction against further installations of infringing payment modules, disabling service to payment modules that practice infringing technology, and removing all infringing mobile apps from all third party app stores such as the Google Play Store and Apple App Store, and for all further proper injunctive relief pursuant to 35 U.S.C. § 283;

d. Judgment that Nayax account for and pay to PayRange all damages and costs incurred by PayRange, caused by Nayax's infringing activities complained of herein;

e. Judgment that Nayax willfully infringed and increase the damages award to PayRange up to three times the amount assessed, pursuant to 35 U.S.C. § 284;

f. That PayRange be granted pre-judgment and post-judgment interest on the damages;

g. That this Court declare this an exceptional case and award PayRange reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

h. That PayRange be granted such other and further relief as the Court may deem just and proper under the circumstances.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury of this action.

Dated: June 24, 2024

Respectfully submitted,

By: */s/ Ryan R. Smith*

James C. Yoon (Admitted to Practice WDTX;
CA State Bar No. 177155)
Ryan R. Smith (Admitted to Practice WDTX;
CA State Bar No. 229323)
Jamie Y. Otto (PHV forthcoming)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Tel: (650) 493-9300

*Attorneys for Plaintiff PayRange Inc.*